**MINUTES [1:30]**
**September 29, 2011**

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| SGC LAND, LLC. and SMITHBURG, INC. | CIVIL ACTION NO. 10-1778 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| LOUISIANA MIDSTREAM GAS SERVICES, LLC, ET AL | MAGISTRATE JUDGE HORNSBY |

On September 26, 2011, the Court conducted oral argument on Defendants' motion for partial summary judgment as to the Plaintiffs' claim of trespass.  [Record Document 48].  For the reasons stated orally on the record and summarized below, the Court **DENIED** Defendants' motion.

The parties do not dispute that Defendant Louisiana Midstream violated the Easement and Right of Way Agreement executed by the parties on July 22, 2009 [Record Document 64] by building a pipeline outside of the area specified by the Easement.  In defense, Defendants point to language in the Oil, Gas & Mineral Lease of March 7, 2008 [hereinafter "Lease", Record Document 14] that they contend granted them the right to build a pipeline anywhere on Plaintiffs' property. Defendants moved for partial summary judgment, contending that the language of the Lease entitled them to judgment as a matter of law.  [Record Document 48-1, pp. 3 and 4].

In giving its reasons for judgment, the Court outlined the following timeline which provides the backdrop for this litigation:

| | |
|---|---|
| March 7, 2008 | Suncoast Land Services, Inc. (Suncoast) entered into the Lease with Smithburg. [Record Document 14]. Sometime later, Suncoast assigned its interest in the mineral lease to Chesapeake Louisiana, L.P. (Chesapeake La.). |
| Feb./March 2009 | The Smithburg well was spud. [Cf. Chesapeake Material Undisputed Fact #5, Record Document 48-5, p.2, with SGC disputed fact #5, Record Document 51, p.2]. |
| March 12, 2009 | Smithburg and Chesapeake Operating, Inc. entered into a "Surface Damage Release and Grant of Surface Easement", regarding the location of the well. [Record Document 14-2]. |
| March 26, 2009 | Chesapeake Louisiana L.P. entered into a "Partial Assignment and Assumption of Lease Agreement" with Louisiana Midstream Gas Services, L.L.C. (La. Midstream) transferring to it the right to construct a pipeline on the land. [Record Document 48-3]. |
| July 22, 2009 | Smithburg and La. Midstream entered into an "Easement and Right of Way Agreement" (pipeline agreement) providing for the installation of a pipeline across a specific section of the property defined by an attached plat. [Record Document 64]. |
| August 2009 | The pipeline at issue was constructed on the property, but it deviated from the section of property specified in the Easement and Right of Way. |
| August 20, 2009 | Chesapeake La. transferred "an interest" in the lease to Larchmont. [Record Document 26, pp.2-3]. |
| August 28, 2009 | The Smithburg well was completed. |
| September 2009 | The well began producing. |
| October 9, 2009 | Smithburg donated all of its interest in the property at issue to SGC Land, L.L.C.. [Record Document 18, p.1]. |

| | |
|---|---|
| 2010 | The Allen Well was spud on adjacent property and began producing. Defendants attempted to get into evidence on the day of oral argument proof of the precise dates of the first production by the Allen Well. The Court did not allow this evidence. However, it is undisputed by the parties that there is a well which was built on adjacent property and which has produced in the past and may still be producing. Indeed, Plaintiffs' claims of both trespass and breach of contract center on the allegation that their property has been improperly used for the construction and production of the Allen Well. |

Thus, there are three contracts before the Court that define the parties' rights and obligations toward each other: the 2008 "Oil, Gas, and Mineral Lease"; the 2009 "Surface Damage Release and Grant of Surface Easement"; and the 2009 "Easement and Right of Way Agreement".  Also before the Court is the 2009 "Partial Assignment and Assumption of Lease Agreement" between Chesapeake La. and Louisiana Midstream which may also be useful to the Court in understanding the legal and contractual rights among the parties.

In urging summary judgment, Defendants rely on the general and broad grant of rights to them to lay pipeline contained in paragraphs 1 and 9 of the "Oil, Gas, and Mineral Lease" for their argument that this contract grants to them the right to construct and maintain pipelines anywhere and for any purpose on the Plaintiffs' property:

1. Lessor... hereby grants and lets exclusively unto Lessee for the purposes of... laying pipe lines... useful or convenient to or in connection with any such operations conducted by Lessee thereon, or on any lands pooled therewith, the following described land in DeSoto Parish, Louisiana...

9.... In exploring for, developing, producing and marketing oil, gas and other substances covered hereby on the leased premises or lands pooled or unitized therewith... Lessee shall have the right of ingress and egress along with the right to conduct such operations on the leased premises, or on any adjoining lands, as may be reasonably necessary for such purposes, including but not limited to the drilling of wells, construction and use of roads, canals, pipelines....

[Record Document 14, pp. 1 and 2]

Plaintiffs, on the other hand, point to the limiting language in paragraphs 23 and 26 which they contend restricted the Defendants' ability to construct or maintain pipelines to only those pipelines which exclusively service the well on Plaintiffs' property:

> 23. In the event the land is placed in a pooled unit or units, the leased 567.08 acres cannot be used for roads, canals, pipelines, tanks, water wells, disposal wells, injection wells, pits, electric and telephone lines, power lines or power stations, unless the well is drilled on the 567.08 acres...
>
> 26. Lessee may not use any portion of the Lessor's land leased herein for the herein leased operations or related activities unless the actual well site is located on Lessor's 567.08 acres.

_____[Id., p.5].

It is clear that the general language in paragraphs 1 and 9 of the mineral lease does indeed grant broad rights to the Defendants.  What is then at issue in the motion for summary judgment is the meaning of paragraphs 23 and 26 which contain the restrictive language.   The Court discussed with Counsel three possible interpretations of these paragraphs:

1) The interpretation advanced by Plaintiffs in their briefs is that only pipelines that exclusively benefit a well on Plaintiffs' land are permitted on their property under the mineral lease. (Plaintiffs concede that the pipeline agreement expands Defendants' rights but contends that those rights are limited by the pipeline plat and subject to other conditions in that agreement, such as abandonment for non-use.) As the only questions before the Court at the hearing were whether the language of the Lease was clear and explicit and whether Defendant's interpretation of the Lease was correct as a matter of law,

the Court did not determine whether Plaintiffs' interpretation was correct as a matter of law.  Furthermore, the Court noted in its reasons that even assuming that this interpretation of the language is correct, the Court lacked factual evidence necessary to grant judgment.  Counsel for Defendants and Plaintiffs disputed whether the Smithburg well - the well located on Plaintiffs' property - has stopped producing.  Furthermore, the status of the Allen Well - a well outside of Plaintiffs' property that allegedly produced gas that was transported through pipelines on Plaintiffs' property - is disputed by the parties. Therefore, the Court noted that even if this interpretation of the Lease is correct, there exist material issues of fact which preclude summary judgment at this time.

2) The Court and Counsel discussed whether the Lease allows Defendants to build and use a pipeline on Plaintiffs' land that serves a well outside of Plaintiffs' property so long as the pipeline also serves a well located on Plaintiffs' property.  As noted above, Counsel for Defendants and Counsel for Plaintiffs disputed whether the Smithburg well - the well located on Plaintiffs' property - has stopped producing.  Furthermore, the status of the Allen Well - a well outside of Plaintiffs' property that allegedly produces gas that is transported through pipelines on Plaintiffs' property - has not been proven by either party. Given these questions of material fact, the Court ruled that Defendants would not be entitled to summary judgment even if this interpretation of the Lease were correct as a matter of law.

3) Finally, the Court and Counsel discussed Defendants' argument that the Lease established the building of a well on Plaintiffs' land as a condition precedent to Defendants'

ability to build pipelines on Plaintiffs' land that serve any well.  That is, Defendants argued that once a well was built on Plaintiffs' land, Defendants had the right to build pipelines anywhere and everywhere on the property and for any purpose.   Defendants appear to be arguing for this interpretation of the contract in their argument that if a landowner allows construction of telephone wires across his property, it does not matter whether the calls which are "traveling" across those wires are the landowners or his neighbors.  The Court asked Counsel why La. Midstream (as assignee of Chesapeake) thought it necessary to execute the pipeline agreement if the Lease already granted it the right to build the pipeline in question.  Counsel stated that such easements were the custom and usage of the industry.  It was the Court's opinion that unless Defendant could make a more convincing argument that the Lease clearly allows the Defendants to build the pipeline in question, the Court would need evidence of the custom and usage of the industry in order to determine the common intent of the parties in the various contracts. LA. CIV. CODE ANN. art. 2045, 2053.  The Court was not persuaded that Defendants had succeeding in carrying their burden of proving that they are entitled to judgment as a matter of law, since Defendants failed to convincingly show that the Lease must  be interpreted in either of the two ways for which Defendants argue.

Defendants also argued that even if the cause of action for the misplaced pipeline does survive summary judgment, that cause of action sounds in contract and not in tort. The underlying difference is that the measure of damages would be different for a breach of contract versus a tortious act. Neither counsel provided the Court with adequate briefing

on this issue and accordingly the Court did not decide this issue.

Because Defendants did not persuade the Court that the language of the Lease was clear and explicit, the Court found that Defendants had not shown that no further interpretation beyond the four corners of the Lease was required to determine the party's intent. LA. CIV. CODE ANN. art. 2046 (2009).  Furthermore, even if the Court did accept one of the first two interpretations of the contractual language, the Court would require facts that the Defendant has not proven in order to render summary judgment. Since Defendants  failed to carry their burden of showing that they are entitled to judgment as a matter of law the Court **DENIED** their motion for partial summary judgment.